UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allstate Insurance Company, d/b/a Allstate
Property and Casualty Insurance Company,
d/b/a Allstate Indemnity Company,
d/b/a Northbrook Indemnity Company,
Farmers Insurance Exchange, d/b/a Illinois
Farmers Insurance Company, d/b/a Mid
Century Insurance Company, d/b/a Bristol
West Insurance Company,

     Plaintiffs,

v.                                                                                  Civil No. 09-3681 (JNE/JJK)
                                                                                       ORDER
Linea Latina De Accidentes, Inc., Cristina
Suarez, Mobile Care Chiropractic, PLLC,
Kristi Lea Zimmerman, D.C., Advanced
Injury Specialists, LLC, Renewal
Bodyworks, LLC, Scott A. Allan, D.C.,
Alex Prigoda, and Morningstar Home Care,

     Defendants.

---

Richard Stempel, Esq., and John Syverson, Esq., Stempel & Doty PLC, appeared for Plaintiffs.

Eric Tostrud, Esq., and Matthew Salzwedel, Esq., Lockridge Grindal Nauen PLLP, appeared for Defendants.

---

     Insurance companies assert claims under federal and state law against chiropractic clinics, a massage therapy clinic, an entity that provides services to the clinics, and individuals associated with the entities. In broad terms, the claims arise out of allegations that Defendants illegally solicited persons insured for no-fault automobile insurance, submitted claims for services that were either not rendered or unnecessary, gave kickbacks to each other, and failed to disclose financial interests. The case is before the Court on Defendants' motion to dismiss the

Amended Complaint.  For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

The identification of the plaintiffs is muddled.  The Amended Complaint's caption identifies two insurers as the plaintiffs.  Paragraphs 12 to 24 of the Amended Complaint characterize the two insurers and the six "d/b/a" companies, if Northbrook Indemnity Company and Northbrook Insurance Company are assumed to be the same,[1] as the plaintiffs.  In their response to Defendants' motion, Plaintiffs stated:

> To avoid any additional confusion, the Plaintiffs in this matter are Allstate Property and Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company, Illinois Farmers Insurance Company, Mid Century Insurance Company, and Bristol West Insurance Company.  Plaintiffs have simply set forth their parent companies in the caption, but will amend the caption should that be necessary.

The Court assumes solely for present purposes that Plaintiffs are Allstate Property and Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company, Illinois Farmers Insurance Company, Mid Century Insurance Company, and Bristol West Insurance Company.  Plaintiffs provide no-fault automobile insurance in Minnesota.

Defendants are Linea Latina De Accidentes, Inc.; Cristina Suarez; Mobile Care Chiropractic, PLLC; Kristi Lea Zimmerman, D.C.; Advanced Injury Specialists, LLC; Renewal Bodyworks, LLC; Scott A. Allan, D.C.; Alex Prigoda; and Morningstar Home Care.  Mobile Care Chiropractic, Advanced Injury Specialists, and Morningstar Home Care are chiropractic clinics that are allegedly owned by Zimmerman, Allan, and Dhruvesh Patel, respectively. Renewal Bodyworks is a mobile massage therapy service that is allegedly owned by

---

[1]     In the Amended Complaint's caption, one of the "d/b/a" companies is Northbrook Indemnity Company.  Paragraphs 16 and 17 identify Northbrook Insurance Company as a plaintiff.

Zimmerman.  Notwithstanding their purported ownership, Plaintiffs contend that the chiropractic clinics are subject to the supervision and management of Zimmerman.  In turn, Zimmerman reports to, and is subject to the control of, Prigoda.  Linea Latina De Accidentes is allegedly owned by Suarez and portrays itself as a "help line" marketing company.  Suarez reports to, and is subject to the control of, Prigoda.  Prigoda is not a licensed chiropractor.

According to Plaintiffs, Linea Latina De Accidentes solicits their insureds who have experienced automobile accidents.  Linea Latina De Accidentes refers the insureds to Mobile Care Chiropractic, Advanced Injury Specialists, or Morningstar Home Care.  Renewal Bodyworks provides massage therapy services for patients of the chiropractic clinics.  The clinics submitted claims to Plaintiffs for services that were either not rendered or unnecessary.

Plaintiffs' Amended Complaint contains eleven counts:  (1) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) RICO conspiracy; (3) consumer fraud; (4) no-fault fraud; (5) common law fraud; (6) insurance fraud; (7) solicitation violations; (8) unjust enrichment; (9) violation of federal and state anti-kickback statutes; (10) failure to disclose financial interest; and (11) corporate practice of medicine.  Counts 1 to 8 are asserted against all defendants.  Count 9 is asserted against Linea Latina De Accidentes, Mobile Care Chiropractic, Advanced Injury Specialists, and Morningstar Home Care.  Count 10 is asserted against Linea Latina De Accidentes, Mobile Care Chiropractic, and Advanced Injury Specialists. Count 11 is asserted against Mobile Care Chiropractic, Kristi Zimmerman, Advanced Injury Specialists, Scott Allan, Alex Prigoda, and Morningstar Home Care.

## II.  DISCUSSION

When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a court must accept the facts alleged in the complaint as

true and grant all reasonable inferences in favor of the plaintiff.  *Crooks v. Lynch*, 557 F.3d 846,

848 (8th Cir. 2009).  Although a complaint is not required to contain detailed factual allegations,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*

## A.      Counts 1 and 2:  RICO

Plaintiffs claim that Defendants violated RICO.  Under RICO, it is "unlawful for any

person employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

unlawful debt."  18 U.S.C. § 1962(c) (2006).  "A violation of § 1962(c) requires [a plaintiff] to

show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Nitro

Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v.

Imrex Co.*, 473 U.S. 479, 496 (1985)), *cert. denied*, 130 S. Ct. 1074 (2010).  Under RICO, it is

also "unlawful for any person to conspire to violate" § 1962(c).  18 U.S.C. § 1962(d).  RICO

provides a private right of action to "[a]ny person injured in his business or property by reason of

a violation of section 1962."  *Id.* § 1964(c).  Defendants assert that Plaintiffs' claims under RICO

should be dismissed because Plaintiffs failed to adequately allege the existence of an enterprise,

injury to their business or property as the result a RICO violation, an agreement to violate RICO, and fraud with particularity.

      1.    *Enterprise*

Defendants maintain that a plaintiff, to plead a RICO enterprise, must allege:  (1) a common or shared purpose; (2) certain continuity of personnel and structure; and (3) an ascertainable structure that is distinct from that inherent in a pattern of racketeering activity.  *See United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004); *Handeen v. Lemaire*, 112 F.3d 1339, 1351 (8th Cir. 1997).  Defendants read the Amended Complaint to assert that their alleged association had no purpose other than to engage in predicate acts of racketeering.  In the absence of an allegation that the alleged enterprise would endure were the predicate acts removed, Defendants maintain that Plaintiffs failed to allege an enterprise.  *See Handeen*, 112 F.3d at 1352; *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 816 (8th Cir. 1992).  Plaintiffs maintain they adequately alleged that the enterprise has an ascertainable structure that is distinct from that inherent in a pattern of racketeering activity.

The Supreme Court recently addressed whether an association-in-fact enterprise under RICO "must have 'an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages.'"  *Boyle v. United States*, 129 S. Ct. 2237, 2241 (2009) (quoting petition for certiorari).[2]  The Supreme Court held "that such an enterprise must have a 'structure' but that an instruction framed in this precise language is not necessary."[3]  *Id.*  To resolve the

---

[2]      Defendants cited *Boyle* in a footnote in their memorandum of law in support of their motion to dismiss the original Complaint.  Neither Defendants nor Plaintiffs cited *Boyle* in the memoranda submitted to support or to oppose the motion to dismiss the Amended Complaint.

[3]      In *Boyle*, the petitioner asked the district court to instruct the jury that the government had to prove that the enterprise "had an ongoing organization, a core membership that functioned as a continuing unit, and an ascertainable structural hierarchy distinct from the charged predicate

issue, the Supreme Court considered three questions:  "First, must an association-in-fact enterprise have a 'structure'?  Second, must the structure be 'ascertainable'?  Third, must the 'structure' go 'beyond that inherent in the pattern of racketeering activity' in which its members engage?"  *Id.* at 2244.

The first question was answered affirmatively:  "an association-in-fact enterprise must have a structure."  *Id.*  "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Id.*

The Supreme Court regarded "ascertainable" as "redundant and potentially misleading":

> Whenever a jury is told that it must find the existence of an element beyond a reasonable doubt, that element must be "ascertainable" or else the jury could not find that it was proved.  Therefore, telling the members of the jury that they had to ascertain the existence of an "ascertainable structure" would have been redundant and potentially misleading.

*Id.* at 2244-45.

As to the third question, the Supreme Court stated that the phrase "beyond that inherent in the pattern of racketeering activity" could be "interpreted in at least two different ways" and that "its correctness depends on the particular sense in which the phrase is used."  *Id.* at 2245.  If the phrase means "that the existence of an enterprise is a separate element that must be proved, it is of course correct."  *Id.*  "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'"  *Id.* (quoting

---

acts."  129 S. Ct. at 2242.  The district court refused to give the requested instruction.  *Id.*  The district court instructed that the jury could "find an enterprise where an association of individuals, without structural hierarchy, forms solely for the purpose of carrying out a pattern of racketeering acts" and that "[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure."  *Id.* at 2242 n.1.  The Supreme Court ultimately concluded that the district court had adequately instructed the jury.  *Id.* at 2247.

*United States v. Turkette*, 452 U.S. 576, 583 (1981)).  "[I]f the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect."  *Id.* "[T]he evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'"  *Id.* (quoting *Turkette*, 452 U.S. at 583).

The Supreme Court rejected several additional structural requirements:

> As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose.  Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.  While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.  Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; *for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.*

*Id.* at 2245-46 (emphasis added); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) ("To the extent our cases have interpolated additional requirements into the statute, they are abrogated by *Boyle*."); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010) ("All that *Boyle* requires of a RICO enterprise is that it have 'three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" (quoting *Boyle*, 129 S. Ct. at 2244));[4] *United States v. Wilson*, 605 F.3d 985, 1020 (D.C. Cir.) (per curiam)

---

[4]      In *Boyle*, the Supreme Court stated that its rejection of the petitioner's arguments regarding structural characteristics "does not lead to a merger of the crime proscribed by 18 U.S.C. § 1962(c) . . . and any of the following offenses:  operating a gambling business,

(concluding that challenge to jury instructions "on the ground that an association-in-fact enterprise must have some structure beyond the attendant pattern of racketeering activity" was "without merit"), *cert. denied*, 131 S. Ct. 841 (2010); *United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir.) ("Simply put, after *Boyle*, an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity."), *cert. denied*, 130 S. Ct. 656 (2009).

Assuming without deciding that Defendants correctly read the Amended Complaint to allege that the purpose of their association was limited to engaging in predicate acts of racketeering, the Court rejects the argument that Plaintiffs failed to allege an enterprise. The Amended Complaint's allegations do not place this case among those "in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise." *Boyle*, 129 S. Ct. at 2245 n.4; *cf. In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 368-70 (discussing requirements for pleading civil RICO claims). The Court rejects Defendants' argument that Plaintiffs failed to allege an enterprise.[5]

    2.    *Injury to business or property*

Defendants maintain that Plaintiffs failed to allege an injury to Plaintiffs' business or property by reason of a violation of § 1962 because Plaintiffs failed to plead a concrete financial loss. "'[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest.'" *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir.

---

conspiring to commit one or more crimes that are listed as RICO predicate offenses, or conspiring to violate the RICO statute." 129 S. Ct. at 2246 (citations omitted).

[5]    In a footnote, Defendants contend that Plaintiffs failed to allege Allan's participation in the operation or management of the alleged enterprise. This issue is not adequately briefed. The Court expresses no opinion on it.

2004) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)); *see United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 572 (8th Cir. 1996) (rejecting argument that plaintiff failed to establish damages under RICO where plaintiff paid insurance premiums and defendant's fraudulent acts prevented premiums from reaching insurers such that insurance coverage did not exist); *Bennett v. Berg*, 685 F.2d 1053, 1058 (8th Cir. 1982) (retirement community residents alleged RICO injury where "Entrance Endowments" entitling residents to occupancy for life were allegedly worth 10% of intended value due to defendants' conversion of payments), *aff'd on reh'g*, 710 F.2d 1361 (8th Cir. 1983) (en banc).  Accepting the Amended Complaint's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately alleged concrete financial loss.

     *3.*     *Conspiracy*

     Defendants contend that Plaintiffs' claim for conspiracy under RICO should be dismissed because "there is not a single non-conclusory allegation in the complaint that [D]efendants objectively manifested an agreement to violate RICO."  To establish a RICO conspiracy in violation of § 1962(d), a plaintiff "must present evidence beyond that required to establish a right to relief under § 1962(c).  The additional evidence required to show a RICO conspiracy 'need only establish a tacit understanding between the parties, and . . . may be shown wholly through the circumstantial evidence of [each defendant's] actions.'"  *United States v. Kehoe*, 310 F.3d 579, 587 (8th Cir. 2002) (alterations in original) (citation omitted) (quoting *Handeen*, 112 F.3d at 1355); *see United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995) (stating that "[p]roof of an express agreement is not required").  Accepting the Amended Complaint's allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately alleged Defendants agreed to violate RICO.

4.      *Fraud*

The particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to allegations of mail fraud where, as here, a plaintiff alleges mail fraud as predicate acts for a RICO claim. *Nitro Distrib.*, 565 F.3d at 428-29; *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995). Rule 9(b) states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Defendants contend that Plaintiffs' RICO claims should be dismissed because Plaintiffs failed to plead fraud with particularity.

> Under Rule 9(b), a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." The level of particularity required depends on, *inter alia*, the nature of the case and the relationship between the parties. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Rule 9(b) should be read "in harmony with the principles of notice pleading."

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted); *see Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). Where a plaintiff alleges a systematic practice of the submission of fraudulent claims over an extended period of time, the plaintiff need not allege the specific details of every fraudulent claim. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Instead, the plaintiff must allege some representative examples of the fraudulent conduct with particularity. *Id.* In this case, Plaintiffs identified each claim that is allegedly fraudulent, the claim number, and the date of claim, and they have adequately alleged examples of fraudulent claims. The Court denies Defendants' motion to dismiss under Rule 9(b).

**B.      Count 3:  Consumer fraud**

Defendants assert that Plaintiffs' claim under the Minnesota Consumer Fraud Act

(MCFA) should be dismissed because Plaintiffs failed to plead fraud with particularity.

Defendants essentially repeat the arguments directed toward the RICO claims.  For the reasons

set forth above, the Court rejects the argument that Plaintiffs failed to plead fraud with

particularity.

Defendants also assert that Plaintiffs' claim under the MCFA should be dismissed

because Plaintiffs failed to demonstrate that the claim benefits the public interest.  The MCFA

prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false

promise, misrepresentation, misleading statement or deceptive practice, with the intent that

others rely thereon in connection with the sale of any merchandise."  Minn. Stat. § 325F.69,

subd. 1 (2010).  It also prohibits "[t]he act, use, or employment by any person of any solicitation

for payment of money by another by any statement or invoice, or any writing that could

reasonably be interpreted as a statement or invoice, for merchandise not yet ordered or for

services not yet performed and not yet ordered."  *Id.*, subd. 4.  "[T]he Minnesota Private

Attorney General Statute provides that 'any person injured by a violation' of the MCFA may

recover damages, together with costs and attorney fees.  The Supreme Court of Minnesota has

held 'that the Private AG Statute applies only to those claimants who demonstrate that their

cause of action benefits the public . . . .'"  *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 856

(8th Cir. 2008) (citation omitted) (quoting Minn. Stat. § 8.31, subd. 3a, and *Ly v. Nystrom*, 615

N.W.2d 302, 314 (Minn. 2000)).  "Litigation over an alleged misrepresentation that was made

only to one person 'does not advance state interests and enforcement has no public benefit.'"

*Davis v. U.S. Bancorp*, 383 F.3d 761, 768 (8th Cir. 2004) (quoting *Ly*, 615 N.W.2d at 314); *cf.*

*Collins v. Minn. Sch. of Bus.*, 655 N.W.2d 320, 330 (Minn. 2003) (concluding action benefitted public where misrepresentations about education programs were made to the public at large in television advertisements and other presentations).  At this preliminary stage of the litigation, the Court declines to conclude that Plaintiffs failed to demonstrate the claim benefits the public interest.

**C.      Count 4:  No-fault fraud**

Referring to the argument made in connection with the RICO claims, Defendants contend that Plaintiffs failed to allege their claim under Minn. Stat. § 65B.54, subd. 4 (2010), with particularity.  For the reasons set forth above, the Court rejects this argument.

**D.      Count 5:  Common law fraud**

Relying on the argument made in connection with the RICO claims, Defendants maintain that Plaintiffs failed to allege their claim for fraud with particularity.  For the reasons set forth above, the Court rejects this argument.

**E.      Count 6:  Insurance fraud**

In Count 6 of the Amended Complaint, Plaintiffs claim that Defendants violated Minn. Stat. § 60A.951, subd. 4 (2010).  Section 60A.951 defines several terms for Minn. Stat. §§ 60A.951-.956 (2010).  Defendants assert that Plaintiffs do not have a private right of action under section 60A.951, subd. 4, and that Plaintiffs cannot enforce the subdivision under Minnesota's private attorney general statute, Minn. Stat. § 8.31 (2010).  Before considering whether Plaintiffs have a private right of action, the Court reviews sections 60A.951-.956.

The terms defined in section 60A.951 include "insurance fraud" and "authorized person." Insurance fraud includes the presentation to an insurer of a statement that contains materially false or misleading information, or a material and misleading omission, concerning a claim for

payment.  Minn. Stat. § 60A.951, subd. 4.  Authorized persons are county attorneys, sheriffs, chiefs of police, the superintendent of the Bureau of Criminal Apprehension, the commissioner of commerce, the Division of Insurance Fraud, the commissioner of labor and industry, the attorney general, or any duly constituted criminal investigative department or agency of the United States.  *Id.* § 60A.951, subd. 2.

Section 60A.952 requires an insurer to disclose information to an authorized person in response to "a written request from an authorized person stating that the authorized person has reason to believe that a crime or civil fraud has been committed in connection with an insurance claim, insurance transaction, payment, or application."  *Id.* § 60A.952, subd. 1.  In addition, an insurer that reasonably believes that "an act of insurance fraud will be, is being, or has been committed, shall furnish and disclose all relevant information to the Division of Insurance Fraud Prevention or to any authorized person and cooperate fully with any investigation conducted by the Division of Insurance Fraud Prevention."[6]  *Id.* § 60A.952, subd. 2.  An insurer that releases information in good faith under section 60A.952 is immune from civil or criminal liability for the release of the information.  *Id.* § 60A.952, subd. 3.  Notice to the Division of Insurance Fraud Prevention under subdivision 2 by an insurer "tolls any applicable time period in any unfair claims practices statute or related regulations, or any action on the claim against the insurer to whom the claim had been presented for bad faith."  *Id.* § 60A.952, subd. 4.  The Division of Insurance Fraud and insurers "may establish a voluntary fund to reward persons not connected with the insurance industry who provide information or furnish evidence leading to the arrest and conviction of persons responsible for insurance fraud."  *Id.* § 60A.952, subd. 5.

---

[6]     The Division of Insurance Fraud Prevention is required to "review notices and reports of insurance fraud submitted by authorized insurers" and to "initiate inquiries and conduct investigations when the division has reason to believe that insurance fraud has been or is being committed."  Minn. Stat. § 45.0135, subd. 2b (2010).

Section 60A.953 provides that "[t]he intentional failure to provide information as required by section 60A.952, subdivision 1, or to provide notification of insurance fraud as required by section 60A.952, subdivision 2, is punishable as a misdemeanor."  It also provides that knowing or intentional interference with the enforcement of sections 60A.951-.956 or with the investigation of suspected or actual violations of sections 60A.951-.956 is punishable as a misdemeanor.

Section 60A.954 requires an insurer to "institute, implement, and maintain an antifraud plan."  *Id.* § 60A.954, subd. 1.  The plan must establish procedures to prevent insurance fraud, to report insurance fraud to appropriate law enforcement authorities, and to cooperate with the prosecution of insurance fraud cases.  *Id.*  The commissioner of insurance is authorized to review each insurer's plan for compliance with section 60A.954.  *Id.* § 60A.954, subd. 2.

Section 60A.955 requires insurance claim forms to contain a fraud warning.  "The absence of the required warning does not constitute a defense in a prosecution for a violation of chapter 609 or any other chapter of Minnesota Statutes."  *Id.* § 60A.955.

Section 60A.956 states:

> Nothing in sections 60A.951 to 60A.956 preempts the authority of or relieves the duty of any other law enforcement agencies to investigate and prosecute alleged violations of law, prevents or prohibits a person from voluntarily disclosing any information concerning insurance fraud to any law enforcement agency other than the Division of Insurance Fraud Prevention, or limits any of the powers granted elsewhere by the laws of this state to the commissioner of commerce to investigate alleged violations of law and to take appropriate action.

"Generally, '[a] statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication.'"  *Lickteig v. Kolar*, 782 N.W.2d 810, 814 (Minn. 2010) (alteration in original) (quoting *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007)).  Nothing in sections 60A.951-.956 expressly provides for a

private right of action.  In analyzing whether an implied right of action exists, the parties address whether (1) the plaintiff belongs to the class for whose benefit the statute was enacted, (2) the legislature indicated an intent to create a civil remedy, and (3) implying a remedy would be consistent with the underlying purposes of the statute.  *Cf. Becker*, 737 N.W.2d at 207 n.4 (noting dispute as to whether three-factor test of *Cort v. Ash*, 422 U.S. 66 (1975), was effectively rejected).

Briefly summarized, sections 60A.951-.956 require insurers to disclose information related to insurance fraud to governmental authorities; punish the failure to provide the information or to cooperate with an investigation as a misdemeanor; and require insurers to institute an antifraud plan under which insurers cooperate in the prosecution of insurance fraud cases.  The Court discerns no intent to imply a private cause of action here.  *Cf. Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916-17 (Minn. Ct. App. 2003).

Finally, the Court considers the parties' dispute regarding enforcement of section 60A.951, subd. 4, under Minnesota's private attorney general statute, which provides that "any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."  Minn. Stat. § 8.31, subd. 3a.  The laws referred to in section 8.31, subd. 1, do not include sections 60A.951-.956, and Plaintiffs have not demonstrated that the Minnesota legislature intended sections 60A.951-.956 to be subject to the private civil action provision of section 8.31, subd. 3a.  *Cf. Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233, 236 (Minn. 1986); *State v. Ri-Mel, Inc.*, 417 N.W.2d 102, 111 (Minn. Ct. App. 1987).

In short, there is no express or implied private right of action to enforce section 60A.951,

subd. 4.  Plaintiffs cannot enforce the provision under Minnesota's private attorney general

statute.  Accordingly, the Court dismisses Count 6.

**F.     Count 7:  Solicitation violations**

In Count 7, Plaintiffs allege that Defendants solicited individuals, advertised, and

marketed in violation of Minn. Stat. § 65B.54, subd. 6 (2010).  Defendants contend that there is

no express or implied private right of action under this subdivision.  Plaintiffs maintain there is

an implied private right of action.

Minnesota Statutes § 65B.54, subd. 6(a), prohibits a licensed health care provider from

initiating "direct contact . . . with any person who has suffered an injury arising out of the

maintenance or use of an automobile, for the purpose of influencing that person to receive

treatment or to purchase any good or item from the licensee or anyone associated with the

licensee."  However, licensees may, under certain conditions, mail advertising literature directly

to such persons.  Minn. Stat. § 65B.54, subd. 6(b).  In addition, section 65B.54, subd. 6, does not

apply to certain contacts, such as "advertising that does not involve direct contact with specific

prospective patients" or "general marketing practices such as giving lectures." *Id.* § 65B.54,

subd. 6(c).  "A violation of [section 65B.54, subd. 6,] is grounds for the licensing authority to

take disciplinary action against the licensee, including revocation in appropriate cases." *Id.*

§ 65B.54, subd. 6(d).

Subdivision 6 does not expressly provide for a private right of action.  It explicitly

empowers a licensing authority to take disciplinary action against a licensee for a violation of the

subdivision.  It appears in a section of the Minnesota Statutes where the Minnesota legislature

otherwise provided for a private right of action. *See* Minn. Stat. § 65B.54, subd. 4 (providing

that "[a] reparation obligor may bring an action to recover benefits which are not payable, but are in fact paid," under certain circumstances).  Under these circumstances, the Court discerns no implied private right of action to enforce section 65B.54, subd. 6.  *Cf. Becker*, 737 N.W.2d at 208-09 ("Other language in [the Minnesota Child Abuse Reporting Act] demonstrates that the legislature expressly creates civil liability when it intends to do so.").  The Court dismisses Count 7.

## G.      Count 8:  Unjust enrichment

Defendants maintain that the gravamen of Plaintiffs' claim for unjust enrichment is fraud and that, like the RICO claims, Plaintiffs failed to plead fraud with particularity.  For the reasons set forth above, the Court rejects the argument that Plaintiffs failed to plead fraud with particularity.

## H.      Count 9:  Violation of federal and state anti-kickback statutes

In Count 9 of the Amended Complaint, Plaintiffs claim that Linea Latina De Accidentes, Mobile Care Chiropractic, Advanced Injury Specialists, and Morningstar Home Care violated federal and state anti-kickback statutes.  *See* 42 U.S.C. § 1320a-7b(b) (2006) (amended 2010); Minn. Stat. § 62J.23 (2010).  Defendants assert that Count 9 should be dismissed because there is no private right of action under the statutes and because Plaintiffs failed to allege that any contract between Plaintiffs and Defendants contained a provision that violates the statutes. Plaintiffs respond that there is a private right of action to enforce each statute.

At least one circuit court of appeals and many district courts have held that there is no private right of action to enforce § 1320a-7b(b).  *See, e.g.*, *W. Allis Mem'l Hosp., Inc. v. Bowen*, 852 F.2d 251, 255 (7th Cir. 1988); *United States ex rel. Villafane v. Solinger*, 543 F. Supp. 2d 678, 700 (W.D. Ky. 2008); *Rzayeva v. United States*, 492 F. Supp. 2d 60, 78 (D. Conn. 2007);

*Roberson v. Medtronic, Inc.*, 494 F. Supp. 2d 864, 870-71 (W.D. Tenn. 2007); *United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C. 2003); *Donovan v. Rothman*, 106 F. Supp. 2d 513, 516 (S.D.N.Y. 2000).  Plaintiffs cite *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minnesota*, 671 N.W.2d 213 (Minn. Ct. App. 2003), to support the proposition that they have a private right of action under each statute.  After concluding that a separate analysis under state law was not necessary, the Minnesota Court of Appeals in *Alpha Real Estate* addressed whether a provision of a lease violated the federal anti-kickback statute in connection with a lessor's claim for breach of contract against a lessee.  671 N.W.2d at 216-17 ("A contract may be deemed illegal if it violates the federal anti-kickback statute.").  The court of appeals did not recognize a private right of action under the federal and state anti-kickback statutes.  *Cf. DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009) (in action for declaratory relief, holding that plaintiff's invocation of § 1320a-7b(b) as a defense to his partners' anticipated state-law contract action to enforce their rights under a partnership agreement was not a source of federal jurisdiction).  The Court concludes that there is no private right of action under § 1320a-7b(b) or section 62J.23.  The Court dismisses Count 9.

## I.    Count 10:  Failure to disclose financial interest

In Count 10, Plaintiffs allege that Linea Latina De Accidentes, Mobile Care Chiropractic, and Advanced Injury Specialists violated Minn. Stat. § 144.6521 (2010) by making referrals without providing the disclosure required by the section.  Defendants contend that there is no private right of action under section 144.6521 and that Plaintiffs failed to allege any prohibited referrals by a health care provider to a hospital, outpatient surgical center, or diagnostic imaging facility.

The Court begins by reviewing the section.  Under certain circumstances, a health care provider must provide a written disclosure to a patient when referring the patient to a hospital, outpatient surgical center or diagnostic imaging facility, or an affiliate of one of these entities:

> No health care provider with a financial or economic interest in, or an employment or contractual arrangement that limits referral options with, a hospital, outpatient surgical center or diagnostic imaging facility, or an affiliate of one of these entities, shall refer a patient to that hospital, center, or facility, or an affiliate of one of these entities, unless the health care provider discloses in writing to the patient, in advance of the referral, the existence of such an interest, employment, or arrangement.

> The written disclosure form must be printed in letters of at least 12-point boldface type and must read as follows: "Your health care provider is referring you to a facility or service in which your health care provider has a financial or economic interest."

Minn. Stat. § 144.6521, subd. 1.  Hospitals, outpatient surgical centers, and diagnostic imaging facilities must report to the commissioner of health any suspected violations of section 144.6521 by a health care provider who made a referral to the hospital, center, or facility.  *Id.*  In addition to providing a written disclosure, a health care provider must, under certain circumstances, post a notice in a conspicuous public location in the provider's facility:

> In addition to the requirement in subdivision 1, each health care provider who makes referrals to a hospital, outpatient surgical center or diagnostic imaging facility, or an affiliate of one of these entities in which the health care provider has a financial or economic interest, or has an employment or contractual arrangement with one of these entities that limits referral options, shall post a notice of this interest, employment, or arrangement in a patient reception area or waiting room or other conspicuous public location within the provider's facility.

*Id.* § 144.6521, subd. 2.  Definitions appear in section 144.6521, subd. 3.

Section 144.6521 does not expressly provide for a private right of action.  As noted above, it requires hospitals, outpatient surgical centers, and diagnostic imaging facilities to report suspected violations to the commissioner of health.  Violations of section 144.6521 may lead the commissioner of health to refuse to grant or renew, or to suspend or revoke, a license of a

hospital or outpatient surgical center.  Minn. Stat. § 144.55, subd. 6(5) (2010).  The Court

discerns no intent to provide for a private right of action under section 144.6521.  The Court

dismisses Count 10.

**J.      Count 11:  Corporate practice of medicine doctrine**

Plaintiffs claim that Mobile Care Chiropractic, Advanced Injury Specialists, Morningstar

Home Care, Zimmerman, Allan, and Prigoda have violated the corporate practice of medicine

doctrine.  Under the doctrine, "corporate employment of chiropractors is prohibited except as

expressly permitted by statute."  *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513,

524 (Minn. 2005); *see Minn. Bd. of Chiropractic Exam'rs v. Cich*, 788 N.W.2d 515, 520 (Minn.

Ct. App. 2010) ("This doctrine prohibits the corporate practice of health care.  But the

[Minnesota Professional Firms Act] provides an exception to this doctrine and permits the

formation of professional corporations to practice chiropractic, provided all ownership interests

are held by licensed professionals." (citation omitted)).  Defendants contend that Count 11

should be dismissed because Plaintiffs failed to allege that the chiropractic clinics were or are

owned by lay persons.  Accepting the Amended Complaint's allegations as true and drawing all

reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately

alleged that lay persons own or hold, directly or indirectly, ownership interests in the chiropractic

clinics.  *Cf.* Minn. Stat. § 319B.07, subd. 1 (2010).  The Court denies Defendants' motion with

respect to Count 11.[7]

---

[7]      Plaintiffs misstate the consequences of a violation of the corporate practice of medicine doctrine.  Citing *Isles Wellness, Inc. v. Progressive Northern Insurance Co.*, 725 N.W.2d 90 (Minn. 2006), Plaintiffs assert that it is "quite clear that billings from treatment providers operating in violation of the Corporate Practice Medicine Doctrine are void."  In *Isles Wellness*, the Minnesota Supreme Court stated that its "jurisprudence does not support creating a per se rule, which would void all contracts entered into in violation of the corporate practice of medicine doctrine as a matter of public policy"; concluded that "categorically voiding the

## III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Defendants' motion to dismiss [Docket No. 39] is GRANTED IN PART
       and DENIED IN PART.

2.    Counts 6, 7, 9, and 10 of the Amended Complaint are DISMISSED.

Dated:  February 16, 2011

                                          s/  Joan N. Ericksen
                                          JOAN N. ERICKSEN
                                          United States District Judge

---

contracts would not serve the public policy reasons underlying the corporate practice of medicine
doctrine"; and stated that it "will not void a contract unless it is established that the corporation's
actions show a knowing and intentional failure to abide by state and local law."  725 N.W.2d at
94-95.