UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Allstate Insurance Company, d/b/a Allstate
Property and Casualty Insurance Company,
d/b/a Allstate Indemnity Company,
d/b/a Northbrook Indemnity Company,
Farmers Insurance Exchange, d/b/a Illinois
Farmers Insurance Company, d/b/a Mid
Century Insurance Company, d/b/a Bristol
West Insurance Company,

       Plaintiffs,

v.

Linea Latina De Accidentes, Inc., Cristina
Suarez, Mobile Care Chiropractic, PLLC,
Kristi Lea Zimmerman, D.C., Advanced
Injury Specialists, LLC, Renewal
Bodyworks, LLC, Scott A. Allan, D.C.,
Alex Prigoda, and Morningstar Home Care,

      Defendants.

Civil No. 09-3681 (JNE/JJK)
ORDER

---

Richard Stempel, Esq., Bradley Doty, Esq., and Steven Pope, Esq., Stempel & Doty PLC,
appeared for Plaintiffs.

Eric Tostrud, Esq., and David Asp, Esq., Lockridge Grindal Nauen PLLP, appeared for
Defendants.

---

      Plaintiffs provide no-fault automobile insurance in Minnesota.  Defendants are Mobile

Care Chiropractic, PLLC; Kristi Lea Zimmerman, D.C.; Advanced Injury Specialists, LLC;

Renewal Bodyworks, LLC; Scott A. Allan, D.C.; Alex Prigoda; and Morningstar Home Care.[1]

Mobile Care Chiropractic, Advanced Injury Specialists, and Morningstar Home Care are

chiropractic clinics organized by Zimmerman, Allan, and Dhruvesh Patel, respectively.  Renewal

---

[1]      By stipulation, Plaintiffs dismissed their claims against Linea Latina De Accidentes, Inc.,
and Cristina Suarez.

Bodyworks, a clinic organized by Zimmerman, provides massage therapy.  Plaintiffs contend

that the clinics submitted fraudulent bills and that Alex Prigoda actually owns the chiropractic

clinics.  Plaintiffs assert claims for violations of the Racketeer Influenced and Corrupt

Organizations Act (RICO); consumer fraud; no-fault fraud; common law fraud; unjust

enrichment; and violations of the corporate practice of medicine doctrine.[2]  The case is before the

Court on Defendants' motion to exclude an expert, Defendants' Motion for Summary Judgment,

Plaintiffs' Motion for Partial Summary Judgment, Allan's Motion for Rule 11 Sanctions, and

Plaintiffs' Motion for Rule 11 Sanctions.  For the reasons set forth below, the Court denies the

motions.

**I.      Defendants' Motion to Exclude Expert Report and Testimony of Craig Little, D.C.**

Defendants move to exclude the expert report and testimony of Craig Little, D.C.,

Plaintiffs' expert witness in chiropractic medicine.  The admissibility of expert testimony is

governed by Rule 702 of the Federal Rules of Civil Procedure, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will
>     help the trier of fact to understand the evidence or to determine a fact in
>     issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts
>     of the case.

Defendants assert that Dr. Little's opinion is unreliable because he made factual errors, failed to

establish any connection between a particular patient's condition and treatment, and improperly

relied on examinations under oath of patients.  Having reviewed the record, the Court concludes

that Dr. Little's opinion is not so fundamentally unreliable as to be inadmissible.  The Court

expects that Defendants will explore the assertions they made about his opinion on cross-

---

[2]      On February 16, 2011, the Court dismissed several other claims asserted by Plaintiffs.

examination.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of

proof are the traditional and appropriate means of attacking shaky but admissible evidence.");

*Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1121 (8th Cir. 2006) ("[T]he factual basis of an

expert's opinion generally relates to the weight a jury ought to accord that opinion.  Thus, unless

the factual or methodological basis for the testimony is fundamentally unreliable, its admission is

not an abuse of discretion." (citation omitted)); *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951,

955 (8th Cir. 2000) ("Attacks on the foundation for an expert's opinion, as well as the expert's

conclusions, go to the weight rather than the admissibility of the expert's testimony.").

Defendants' Motion to Exclude Expert Report and Testimony of Craig Little, D.C., is denied.[3]

## II.    Defendants' Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to

particular parts of materials in the record," show "that the materials cited do not establish the

absence or presence of a genuine dispute," or show "that an adverse party cannot produce

admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need

consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ.

P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must look at the

record and any inferences to be drawn from it in the light most favorable to the nonmovant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[3]    It appears that Plaintiffs recognize Little may not opine on the credibility of witnesses, *see Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) ("Weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony."), or on matters beyond his expertise.

A.    **RICO**

Under RICO, it is "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c) (2006).  It is

also "unlawful for any person to conspire to violate" § 1962(c).  *Id.* § 1962(d).  "A violation of

§ 1962(c) requires [a plaintiff] to show '(1) conduct (2) of an enterprise (3) through a pattern (4)

of racketeering activity.'"  *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)

(quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  RICO provides a private

right of action to "[a]ny person injured in his business or property by reason of a violation of

section 1962."  18 U.S.C. § 1964(c) (2006).

Defendants maintain that Plaintiffs cannot demonstrate an injury by reason of a violation

of § 1962 because Plaintiffs did not rely on Defendants' alleged misrepresentations.  The Court

rejects Defendants' argument.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661

(2008) ("[W]e hold that a plaintiff asserting a RICO claim predicated on mail fraud need not

show, either as an element of its claim or as a prerequisite to establishing proximate causation,

that it relied on the defendant's alleged misrepresentations."); *Schoedinger v. United Healthcare

of the Midwest, Inc.*, 557 F.3d 872, 878 (8th Cir. 2009) (stating "a plaintiff's detrimental reliance

is not an element of a RICO claim predicated on mail fraud").

Defendants also assert that Plaintiffs cannot establish proximate cause with respect to

claims that were subject to no-fault arbitration.  The Court is not persuaded that arbitration

precludes Plaintiffs from demonstrating that they were injured by reason of a violation of § 1962.

*See Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 267 (D. Conn. 2004) ("Allstate was directly

injured by Seigel's fraudulent conduct, since Allstate paid settlements and judgments that were based, at least in part, on phony medical bills, tests that were never performed and/or medical reports that purportedly documented injuries that had never been sustained by the tort victims.").

Next, Defendants contend that they conducted their own business affairs, not the affairs of the alleged enterprise. Defendants maintain that Plaintiffs have no evidence "Allan had *any* degree of control over an associated-in-fact enterprise"; that there is "no evidence that Renewal Bodyworks 'directed the affairs' of an associated-in-fact enterprise"; that "Plaintiffs cannot prove that Mr. Prigoda operated or managed an associated-in-fact enterprise distinct from [his business] ProBill," which "provides billing and management services to medical practices"; and that Plaintiffs "cannot show that Dr. Zimmerman or the clinics [Mobile Care Chiropractic, Advanced Injury Specialists, and Morningstar Home Care] controlled the affairs of an enterprise or other entity apart from each clinic."

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that "one must participate in the operation or management of the enterprise itself" to conduct or participate, directly or indirectly, in the conduct of the enterprise. 507 U.S. at 185. "[L]iability under § 1962(c) is not limited to upper management . . . . An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. "Consonant with the dictate of *Reves*, it is not necessary that a RICO defendant have wielded control over the enterprise, but the plaintiff 'must prove some part in the *direction* . . . of the enterprise's affairs.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) (alteration in original) (quoting *United States v. Darden*, 70 F.3d 1507, 1543 (8th Cir. 1995)). Viewing the record in the light most favorable to Plaintiffs, the Court concludes that

Plaintiffs can prove Defendants participated in the operation or management of the alleged enterprise.

Defendants contend that Plaintiffs cannot prove the existence of an enterprise.  "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).  According to Defendants, "Suarez and Linea Latina acted with a purpose – to provide its clients with assistance appropriate to their situation – that was inconsistent with the submission of insurance claims." *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1026-27 (8th Cir. 2008) ("And 'divergent goals' among members of a purported association-in-fact enterprise is a 'fatal problem' to a RICO claim.").  There is evidence in the record that Suarez had a lot of communication with Prigoda about issues related to Linea Latina; that chiropractors from Mobile Care Chiropractic, including Zimmerman, appeared in an advertisement for Linea Latina; and that Linea Latina's income came from chiropractors.  Viewing the record in the light most favorable to Plaintiffs, a reasonable fact-finder could conclude that Suarez and Linea Latina shared a common purpose with the other members of the alleged enterprise.

Defendants argue that Plaintiffs cannot prove an association among all members of the alleged enterprise.  In support, Defendants assert that "Dr. Allan had never heard of Mr. Prigoda or Ms. Suarez" before this lawsuit, that "Renewal Bodyworks never contracted with either ProBill or Linea Latina," and that "neither ProBill nor Linea Latina did work for Renewal Bodyworks."  According to Allan's deposition testimony, Zimmerman wanted to open another chiropractic practice because "she was getting big with her other practice and it was getting . . . more difficult sometimes with the insurance companies," he and Zimmerman formed Advanced

Injury Specialists, and he knew Linea Latina provided referrals to Advanced Injury Specialists. After establishing Renewal Bodyworks, Zimmerman directed all massage therapy from Mobile Care Chiropractic to Renewal Bodyworks.  Viewing the record in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs could establish the alleged enterprise.  *See United States v. Owens*, 167 F.3d 739, 751-52 (1st Cir. 1999).  The Court denies Defendants summary judgment on Plaintiffs' RICO claims.

### B.      Fraud

Defendants move for summary judgment on Plaintiffs' fraud claims on the grounds that Plaintiffs cannot prove Defendants made false statements on which Plaintiffs relied, that collateral estoppel applies to underlying claims that were subject to no-fault arbitration, and that Plaintiffs cannot demonstrate a public benefit.  Viewing the record in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs could demonstrate Defendants made false statements on which Plaintiffs relied; that collateral estoppel does not apply, *see Johnson v. Milbank State Auto Ins. Co.*, No. C8-99-1359, 2000 WL 224880, at *1 (Minn. Ct. App. Feb. 29, 2000) (concluding "that a party is not collaterally estopped on the basis of a determination in a no-fault dispute"); Minn. R. No-Fault Arbitration 32 ("Given the informal nature of no-fault arbitration proceedings, the no-fault award shall not be the basis for a claim of estoppel or waiver in any other proceeding."); and that Plaintiffs may demonstrate that their action benefits the public, *cf. Workers' Comp. Reinsurance Ass'n v. Wells Fargo Bank, N.A.*, No. A11-1260, 2012 WL 1253094, at *11 (Minn. Ct. App. Apr. 16, 2012).  The Court denies Defendants summary judgment on Plaintiffs' fraud claims.

### C.      Corporate practice of medicine doctrine

Defendants assert that summary judgment on Plaintiffs' claim for violations of the

corporate practice of medicine doctrine is appropriate because Plaintiffs have neither evidence of

a violation of the doctrine, *see Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 703 N.W.2d 513,

524 (Minn. 2005) (holding "that the corporate employment of chiropractors is prohibited except

as expressly permitted by statute"); *Minn. Bd. of Chiropractic Exam'rs v. Cich*, 788 N.W.2d 515,

520 (Minn. Ct. App. 2010) ("This doctrine prohibits the corporate practice of health care.  But

the [Minnesota Professional Firms Act] provides an exception to this doctrine and permits the

formation of professional corporations to practice chiropractic, provided all ownership interests

are held by licensed professionals." (citation omitted)), nor evidence of a knowing and

intentional violation of the doctrine, *see Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725

N.W.2d 90, 95 (Minn. 2006).  There is evidence in the record of knowing and intentional

violations of the corporate practice of medicine doctrine.  For example, in bank applications

signed by both Prigoda and Zimmerman, Prigoda, who is not a licensed chiropractor, represented

himself as an owner of Mobile Care Chiropractic and Advanced Injury Specialists.  Viewing the

record in the light most favorable to Plaintiffs, a reasonable finder of fact could find a knowing

and intentional violation of the corporate practice of medicine doctrine.  The Court denies

Defendants summary judgment on this claim.

### D.      Unjust enrichment

Defendants assert Plaintiffs cannot demonstrate Defendants were unjustly enriched.

Viewing the record in the light most favorable to Plaintiffs, a reasonable finder of fact could find

that Defendants were unjustly enriched.  The Court denies Defendants summary judgment on

this claim.

III.    **Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for summary judgment on their claim for violation of the corporate practice of medicine doctrine.  There is evidence in the record that licensed chiropractors own the ownership interests in the chiropractic clinics.  Viewing the record in the light most favorable to Defendants, a reasonable fact finder could find that there was no violation of the corporate practice of medicine doctrine.  The Court denies Plaintiffs' motion.

IV.    **Allan's Motion for Rule 11 Sanctions**

Allan moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure.  He asserts that Plaintiffs lacked evidentiary support for allegations made in the Amended Complaint, lacked evidentiary support for assertions made in response to Defendants' motion for summary judgment, and asserted legal theories that have no support in existing law.  *See* Fed. R. Civ. P. 11(b).  Having reviewed the record, the Court concludes that Plaintiffs' had evidentiary support for the factual contentions made in their Amended Complaint and motion papers.  The Court also concludes that Plaintiffs' legal contentions are warranted by existing law or by a nonfrivolous argument for extending existing law.  The Court denies Allan's motion for sanctions.

V.    **Plaintiffs' Motion for Rule 11 Sanctions**

Plaintiffs move for sanctions under Rule 11(b)(4).  Having reviewed the record, the Court concludes that Defendants' denials of factual contentions were warranted on the evidence.  The Court denies Plaintiffs' motion for sanctions.

VI.    **Conclusion**

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    Plaintiffs' Motion for Partial Summary Judgment [Docket No. 215] is DENIED.

9

2.      Defendants' Motion to Exclude the Expert Report and Testimony of Craig
        Little, D.C. [Docket No. 220] is DENIED.

3.      Defendants' Motion for Summary Judgment is [Docket No. 230]
        DENIED.

4.      Allan's Motion for Rule 11 Sanctions [Docket No. 256] is DENIED.

5.      Plaintiffs' Motion for Rule 11 Sanctions [Docket No. 268] is DENIED.

Dated: May 15, 2012

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge